[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE PENDENTE LITE ORDERS
In this dissolution action, the court was presented with a battery of motions by both parties. The plaintiff moved for counsel fees pendente lite, custody of the two minor children pendente lite, child support pendente lite, alimony pendente lite, the return of personal property alleged to have been taken from the marital residence, an order that the defendant be compelled to vacate the marital residence and an order that the defendant be examined psychiatrically or psychologically. The defendant moved for custody of the minor children pendente lite, child support pendente lite, counsel fees pendente lite and an order that the plaintiff be examined psychiatrically or psychologically.
 I.
The requests for psychiatric or psychological examinations, as distinguished from the other motions, presented no problem. The parties were in seeming agreement that their respective motions should be granted and that the orders should also encompass the children. They further agreed that they would select one psychiatrist or psychologist to perform the examinations. Their respective motions are granted with the stipulation that they shall notify the court of their choice by November 15, 1990. CT Page 2667
Also at the hearing, the parties agreed that an attorney should be appointed to represent the children. See General Statutes Section 46b-54. Due to the admitted fact that the plaintiff's attorney is unfamiliar with members of the bar in this area who might be willing to undertake such a task, the defendant's attorney is ordered to submit three names for the court to make a choice on or before October 30, 1990.
 II.
Previously, the court, after a hearing, refused to order the defendant to vacate the residence upon the plaintiff's complaint under the Family Violence Act, General Statutes Sections 46b-38 to46b-38f, inclusive. Different considerations, however, now prevail. The parties' relationship has become increasingly acrimonious and the court is concerned with its effect upon themselves and upon the children who are Kristi, aged 5, and Jake, aged 4. The court accepts the plaintiff's persistent testimony that the defendant disregards regimens that are considered normal and beneficial for children of such ages.
The parties' living arrangements are complicated in that the master bedroom at the residence also doubles as the defendant's office for his private as differentiated from his academic employment. Taking all these things into account, the court orders the defendant to vacate the residence except for the hours of 9 to 5 Mondays through Fridays during which hours he may use the residence for his work. Friction and difficulties should be kept to a minimum in that these hours are when the plaintiff is at work. The defendant is prohibited from removing any personal property from the residence without the express permission of the court.
Temporary custody of the children shall be with the plaintiff. This means, of course, that Kristi will continue to attend kindergarten in Southbury and Jake will attend the Teddy Bear Day Care Center in Southbury and will no longer be participating in the day care program at City College in New York. If the defendant is at the residence when the children arrive home, he may enjoy their company but he is not to remove them from the residence. The defendant shall have the children from 1:00 p.m. to 7:00 p.m. on Sundays and during those hours he may take them from the residence.
 III.
The motions for alimony and support required consideration of the parties incomes. From the plaintiff's affidavit, she is paid the weekly net sum of $339.25 by Millbrook Associates. The CT Page 2668 defendant's affidavit, in terms of income, however, is woefully deficient. What the defendant submitted was the same affidavit he used in a case known as Spinka v. Morosco-Gursky, which involved post-judgment motions between himself and his former wife. In that affidavit, the defendant limited his income to monies he earned as an adjunct faculty member teaching interior design at City College and neglected to include all income derived from his design firm, Kenn W. Spinka Associates. Testimony from the plaintiff was that the defendant realized $100,000.00 per year from Kenn W. Spinka Associates and that, on the average, she was given $9,988.00 per month for deposit in their joint bank account. The defendant testified that his yearly income from Kenn W. Spinka Associates approximated $4,670.00. Although the defendant's estimate of earnings was supported by entries on his 1989 and 1990 income tax returns, there was no real way to check these entries inasmuch as tax returns had not been filed for Kenn W. Spinka Associates.
Whatever the actual amounts received by the defendant from Kenn W. Spinka Associates may have been, the sum of them must be greater than he acknowledges when compared to the parties' real estate holdings and the mortgages existing thereon. The plaintiff's affidavit lists three residences: 522 Buck's Hill Road, Southbury, the present marital residence; 725 George's Hill Road, Southbury, a former residence and 6161 Tyndall Street, Riverside, New York also a former residence. The three houses are all in the plaintiff's name but, at this juncture, the status of the titles appears to have been for the defendant's convenience. The mortgages are all joint and several obligations.
In the plaintiff's affidavit, 522 Buck's Hill Road, Southbury is shown to have a fair market value of $350,000.00 less a mortgage of $340,000.00 for an equity of $10,000.00; 725 George's Hill Road, Southbury is shown to have a fair market value of $208,000.00 with a mortgage of $184,000.00 for an equity of $24,000.00; and 6161 Tyndall Street, Riverdale, New York is shown to have a fair market value of $195,000.00 less a mortgage of $52,000.00 for an equity of $143,000.00. The George's Hill Road property is being foreclosed with the mortgage ten months in arrears. The property in Riverdale, New York is under a contract. to sell. At present, there is an arrearage of two months on the mortgage for the Buck's Hill Road house. According to the plaintiff's affidavit, the three parcels of real estate are the parties' only substantial assets. The defendant's affidavit does not even mention them.
In terms of weekly payments, the mortgage on the Buck's Hill Road house requires $713.00 and the mortgage on the Riverdale, New York house needs $153.50. The defendant should pay these amounts so that a home will be maintained for the plaintiff and their CT Page 2669 children and so that a further dissipation of assets can be avoided. "The purpose of an award of alimony and support pendente lite is to provide for the wife and dependent children while they are living apart from the husband pending a determination of the issues in the case." Wilkens v. Wilkens, 10 Conn. App. 576, 578
(1987).
The plaintiff, apparently a successful and award-winning interior designer has understated his income and has ignored his obligations. The court enters an order that the defendant pay to the plaintiff by Friday of each week the sum of $1,000.00. From this amount, the plaintiff shall set aside $867.00 for payment of the monthly mortgage obligations on the Buck's Hill Road house and the house in Riverdale, New York until the later house is sold. Any rentals now being received from tenants at the George's Hill Road house or the house in Riverdale, New York, shall be apportioned equally between the pa parties. The defendant shall bring the mortgage on the Buck's Hill Road house up to current status by January 31, 1991.
It is the court's understanding that the plaintiff maintains medical insurance for herself, the defendant and the children. She shall continue to provide such coverage. Any noncovered medical bills for the children shall be apportioned equally between the parties.
 IV.
In view of the unsettled and unsettling financial situation, the court declines to entertain the motions for counsel fees and for a return of personal property until a later date. The financial situation also warrants a departure from the presumptive effect of the child support guide lines.
BARNETT, J.